UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Jhonatan D. Hernandez,

    Plaintiff,

 –v–

Norward L. Leichliter et al.,

    Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 18 2016

14-CV-5500 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

  Defendants in the above-captioned actioned moved to preclude the testimony of Plaintiff's expert, Dr. James Pugh, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See* Dkt. No. 69. For the reasons articulated below, Defendants' motion is GRANTED.

## I. BACKGROUND

  This lawsuit arises out of a car accident on the George Washington Bridge. Both sides agree that on November 15, 2013, Plaintiff Hernandez was traveling eastbound on the upper level of the George Washington Bridge in a 2013 Honda Accord with Charlie Cruz and Rafael Lopez. Dkt. No. 70 Ex. C. ("Pugh R.") at 6-7; *id*. Ex. B ("McRae R.") at 3. Defendant Leichliter was driving a 1999 Volvo WG truck eastbound to the left of the Honda. Pugh R. at 7. At some point, the left rear side of the Honda made contact with the right front side of the Volvo. *Id*. Plaintiff alleges that Defendant Leichliter caused the accident and further alleges that he has suffered serious physical injury as a result. Dkt. No. 1 at 10.

  Defendants have procured the testimony of Dr. Calum McRae, a biomechanist who conducted a "biomechanical injury causation analysis" to determine if the accident in question

was sufficiently severe to have caused Plaintiff's injuries. McRae R. at 4, 14. In response, Plaintiff seeks to introduce testimony from Dr. James Pugh on accident causation and Plaintiff's injuries. It is Dr. Pugh's testimony that Defendants now challenge under Rule 702 and *Daubert*.

## II.    LEGAL STANDARD

The party seeking to introduce expert testimony "bears the burden of establishing its admissibility by a preponderance of the evidence." *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003). Federal Rule of Evidence 702 allows expert testimony if:

> (a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In evaluating expert testimony under this standard, the court acts as a gatekeeper to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

The reliability inquiry envisioned by *Daubert* is "a flexible one," *id.* at 594, and the factors to be considered "depend[] upon the particular circumstances of the particular case at issue." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The Second Circuit has emphasized that courts should focus on "the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 702). This "flexible *Daubert* inquiry gives the . . . court the discretion needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony." *Id.* at 267.

2

### III. DISCUSSION

Dr. Pugh's expert report opines both on the cause of the accident and whether the accident was sufficiently severe to have caused Plaintiff's injuries. *See* Pugh R. at 10. Defendants argue that both conclusions fail to satisfy Rule 702 and *Daubert*. The Court will evaluate each conclusion separately.

#### A. Causation

In his expert report, Dr. Pugh concludes that "Defendant Leichliter caused the accident" through "inattention and distraction" and that "Plaintiff Hernandez did not contribute to the happening of the accident." Pugh R. at 10. In both his expert report and deposition, Dr. Pugh indicated that he came to this conclusion by reviewing deposition testimony of the Plaintiff and Defendant Leichliter. *Id.* at 6, 7, 10; Dkt. No. 70 Ex. D. ("Pugh Depo.") 39:6-25, 81:8-16. Although Defendant Leichliter had testified that his vehicle was stopped when the accident occurred, *see* Pugh Depo. 82:12-19, Dr. Pugh discounted this testimony and explained his methodology as follows:

> "[Y]ou have three people [Hernandez, Cruz, and Lopez] saying the Honda was stopped and one who has a big blind spot who was adamantly concluding that he was stopped when hit, which is what truck drivers and defendants say all the time . . . . I read the deposition and I don't believe that the defendant truck driver really had the perception that he was stopped."

*Id.* at 86:8-13, 18-21.

This testimony, coupled with Dr. Pugh's failure to point to any technical or scientific basis for his conclusion, shows that his causation determination is based not on an independent accident reconstruction analysis, but on Plaintiff's deposition testimony. "To the extent [Dr. Pugh] merely repeats or recasts the testimony of [Plaintiff] in order to arrive at a theory of causation, he is not testifying as an expert witness based upon specialized knowledge, but rather

3

is acting as a conduit for another witness's testimony in the guise of an expert's opinion." *Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 283 (D. Vt. 2013) (citing *Hutchinson v. Groskin*, 927 F.2d 722, 725 (2d Cir. 1991)). Because Dr. Pugh does not offer any "quantitative or scientifically-based testimony" for his causation determination, *see Lynch v. Trek Bicycle Corp.*, 374 F. App'x 204, 206 (2d Cir. 2010), but instead conducts a credibility assessment of Plaintiff and Defendant Leichliter's deposition testimony, his causation determination is properly excluded under Rule 702 and Daubert. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("[E]xpert opinions that constitute evaluations of witness credibility . . . are inadmissible under Rule 702.").

### B. Biomechanical Analysis

Both Dr. McRae and Dr. Pugh performed a biomechanical analysis to evaluate whether Plaintiff's alleged injuries could have been caused by the accident in question. Defendants argue that Dr. Pugh's testimony on this point should be excluded. Because the Court finds Dr. Pugh's expert conclusions lacking on each prong of the Rule 702 analysis, the Court agrees.

#### 1. Sufficient facts or data

As an initial matter, Dr. Pugh has provided no facts or data to support his conclusion that the accident was of sufficient force to cause Plaintiff's injuries. During his deposition testimony, he explained that evaluating the force or severity of the accident turned on a "[c]rush computation." Pugh Depo. 7:12-14. While Dr. Pugh disclosed the mathematical formula he used, he did not provide the underlying data that he input into the formula. *Id.* at 7:15-25, 8:2-8. This information is similarly absent from his expert report. *See* Pugh. R. at 8-10.

Dr. Pugh did indicate at his deposition that his calculations had been done on a handwritten piece of paper. Pugh Depo. 7:9-19. After the deposition, Defendants served a

subpoena requesting Dr. Pugh's "handwritten computations used in preparing [his] report." Dkt. No. 70 Ex. E. at 4. In response, Plaintiff provided two pages of handwritten notes from Dr. Pugh summarizing Plaintiff and Defendant Leichliter's deposition testimony. *See id*. Ex. F at 3-4. These notes do not contain any data or mathematical computations. *Id*. This point was raised by Defendants in their *Daubert* motion, *see* Dkt. No. 71 at 8, and Plaintiff still has not provided the data used or computations performed by Dr. Pugh. As a result, the Court finds that Plaintiff has not met its burden of establishing that Dr. Pugh's "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b); *see also Baker*, 254 F. Supp. 2d at 353.

### 2. Reliable principles and methods

Furthermore, Dr. Pugh has not established that his methodology was reliable. The only authority he cites in his report in support of his analysis is an article entitled "SAE Paper Number 930889." *See* Pugh. R. at 8. During his deposition testimony, however, he denied that this article was an authority in the field and harshly criticized it as biased. *See* Pugh Depo. 52:3-4, 56:21-25, 57:2-23. Although Dr. Pugh indicated in his deposition testimony that his report included a list of additional references, *id*. 70:5-18, those references were not mentioned in the deposition, are not contained in the version of the report before the Court, and were not provided to the Court in response to the instant motion. Because Dr. Pugh maintains that the only reference before the Court to support his analysis is biased and not an authority in the field, the Court finds that Plaintiff has not met its burden of establishing that Dr. Pugh's expected testimony "is the product of reliable principles and methods." Fed. R. Evid. 702(c); *see also Baker*, 254 F. Supp. 2d at 353.

### 3. Reliable application to the facts of the case at hand

Finally, the Court has serious concerns about the integrity of Dr. Pugh's analysis in this case. As Defendants point out, Dr. Pugh's expert report refers to "plaintiff Nunez" at one point, and refers to a "Fedex truck" in several places, while the facts of this case involve Plaintiff Hernandez's accident with a Volvo truck. *See* Pugh R. at 7-8. Dr. Pugh admitted during his deposition that he had previously performed an accident reconstruction and biomechanical analysis for an individual named Nunez whose case involved a Fedex truck. *See* Pugh Depo. 44:12-45:8. In response to the Defendants' subpoena, Dkt. No. 70 Ex. E at 4, Plaintiff provided Dr. Pugh's full expert report from the Nunez case. *See id.* Ex. F at 5-8. A side-by-side analysis between Dr. Pugh's report in this case and his report in the Nunez case reveals disturbing similarities between the two reports.

As an example, the language in the first three paragraphs of the "Biomechanical Analysis" section of Dr. Pugh's report for this case, Pugh R. at 8-9, is virtually identical (except for names and dates) to the "Biomechanical Analysis" in Dr. Pugh's report from the Nunez case. Dkt. No. 70 Ex. F at 7. Similarly, the language in the second half of the first paragraph and last three paragraphs of the "Accident Reconstruction and Analysis" in Dr. Pugh's report in this case, Pugh. R. at 7-8, is almost identical to the "Accident Reconstruction" section of Dr. Pugh's report from the Nunez case. Dkt. No. 70 Ex. F. at 6-7. The use of identical language in the two reports combined with the references to "plaintiff Nunez" and the "Fedex" truck in Dr. Pugh's report in this case suggest that Dr. Pugh may have simply copied and pasted most of his analysis here from a report in an earlier case. This seriously undermines the reliability of Dr. Pugh's conclusions, particularly in light of Plaintiff's failure to provide the Court with the data and

6

computations underlying those conclusions, and suggests that Dr. Pugh did not conduct an independent analysis here.

## IV. CONCLUSION

Although "exclusion [of expert testimony] remains 'the exception rather than the rule,'" *Vazquez v. City of New York*, No. 10-CV-6277 (JMF), 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014) (quoting *Floyd v. City of New York*, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012)), the Court finds that Dr. Pugh's testimony does not "rest[] on a reliable foundation" in light of the significant problems identified above. *See Daubert*, 509 U.S. at 597. For these reasons, Defendants' motion to exclude the testimony of Dr. Pugh is GRANTED.

This resolves Dkt. No. 69.

SO ORDERED.

Dated: February ___, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge